UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JEREMIAH MARSHALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:15-cv-00726-TWP-DKL |
| ) | |
| INDIANA UNIVERSITY, ) | |
| INDIANA UNIVERSITY-PURDUE ) | |
| UNIVERSITY INDIANAPOLIS, ) | |
| BRIAN TOMLINSON, JASON SPRATT, ) | |
| MARIA HINTON, CHAD AHREN, ) | |
| MELANIE PETERSON, and DIANA SIMS- ) | |
| HARRIS, ) | |
| ) | |
| Defendants. ) | |

**ENTRY ON DEFENDANTS' MOTION TO DISMISS**

This matter is before the Court on Defendants' Motion to Dismiss (Filing No. 11). While a student at Indiana University-Purdue University Indianapolis ("IUPUI"), Plaintiff Jeremiah Marshall ("Marshall") was suspended, expelled and banned from all Indiana University campuses, following accusations of sexual assault by a female student. On April 6, 2015, Marshal filed this action in the Marion Superior Court, alleging that Defendants' policies and response to the accusations denied him due process and free speech rights under both the state and federal Constitutions, and violated his rights under Title IX of the Education Amendments of 1972 ("Title IX"), and the Fourth, Fifth and Fourteenth Amendment's to the United States Constitution. On May 6, 2015, the Defendants removed the case to federal court and filed their motion to dismiss. For the reasons stated below, the Court **grants in part and denies in part** the Defendants' motion.

## I. BACKGROUND

The following facts are taken from Marshall's Complaint (Filing No. 1-1) and must be accepted as true solely for purposes of the motions to dismiss. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").

In 2014, Marshall was a nineteen year old male attending IUPUI. He was a sophomore student in good standing and worked as a paid Resident Advisor for IUPUI. On September 7, 2014, at approximately 4:00 a.m., Marshall was awaken and questioned by an IUPUI Campus Police officer regarding an accusation of sexual misconduct by another student living in his building. That same day, Marshall was placed on interim suspension and evicted from his student housing without a hearing and without being presented with the evidence against him. According to Marshall, there is no physical evidence of the alleged sexual assault. (Filing No. 14 at 26.) No criminal charges have been filed regarding the allegations against Marshall. (Filing No. 17 at 8.)

The next day, September 8, 2014, Marshall emailed Defendant, Jason Spratt ("Dean Spratt"), the Dean of Students at IUPUI, to appeal the interim suspension and eviction from campus. Dean Spratt promptly responded that the interim suspension would remain in place and that Marshall was only permitted on campus for the purpose of meeting with the Office of Student Conduct. While on interim suspension, Marshall was not permitted to attend classes or to access the on-campus Counseling and Psychological Services Center.

On September 17, 2014, Marshall emailed Dean Spratt, Defendant Brian Tomlinson ("Mr. Tomlinson"), the Assistant Dean and Director of Student Conduct, and Defendant Maria Hinton ("Ms. Hinton"), the Assistant Director of Student Conduct, for permission to meet with the Office of Student Conduct. Later that day, Marshall and his father met with Mr. Tomlinson. The next

2

day, September 18, 2014, Marshall received a letter from Ms. Hinton stating that he was accused of on-campus personal misconduct.

Five days later, on September 22, 2014, Marshall met with Ms. Hinton and informed her that he too had been sexually assaulted by another female student. (Filing No. 1-1 at 5.) However, the Defendants never investigated Marshall's reported sexual assault. (Filing No. 1-1 at 11; Filing No. 14 at 27.)

At some point thereafter, Marshall was permitted to view the evidence against him in a closed room at IUPUI, but he was not allowed to have his own copy nor was he allowed to photograph the evidence. On October 13, 2014, Dean Tomlinson provided Marshall with a witness list but prohibited Marshall from contacting any of the witnesses and instructed him that he should not contact other IUPUI students to testify on his behalf.

On October 15, 2014, Marshall retained counsel to represent him in the upcoming disciplinary hearing. Marshall's legal team was similarly denied copies of the evidence, which exceeded over one hundred pages in length. (Filing No. 1-1 at 7; Filing No. 14 at 24.) After intervention by IUPUI's General Counsel, Marshall's attorneys were eventually permitted to read the evidence on the IUPUI campus and take handwritten notes. However, in order to prevent the attorneys from copying the evidence, they were not allowed to take their cell phones into the room. (Filing No. 1-1 at 7; Filing No. 14 at 24.)

On October 30, 2014, 53 days after his interim suspension and eviction occurred, Marshall attended a disciplinary hearing. (Filing No. 1-1 at 8.) The proceeding took place before a three-person panel, consisting of Defendants Dr. Chad Ahren, Dr. Melanie Peterson and Diana Sims-Harris ("the Panel"). In addition, Dean Tomlinson served as a non-voting coordinator on the Panel.

3

Ms. Hinton, a non-practicing attorney and *cum laude* graduate of the University of Notre Dame Law School, presented IUPUI's case against Marshall, presenting evidence and questioning and cross-examining witnesses. In contrast, Marshall was forced to represent himself at the hearing. IUPUI only allowed one of Marshall's three attorneys to be present with him at the hearing, and the sole attorney was not permitted to speak on Marshall's behalf.

At the hearing, Marshall testified and IUPUI Campus Police officers testified. However, the alleged victim did not testify and the Panel heard only hearsay evidence regarding the allegations against Marshall. The Panel assessed the allegations based on a preponderance of the evidence standard. ([Filing No. 1-1 at 9](Filing No. 1-1 at 9).)

On October 30, 2014, Marshall received a letter from Dean Tomlinson, stating that the Panel had found him guilty of Personal Misconduct, that he was expelled from IUPUI, and that he was banned from all Indiana University campuses. On November 4, 2014, Marshall appealed the lifetime expulsion and ban, which IUPUI denied a week later, on November 11, 2014.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal if the complaint fails to sets forth a claim upon which relief can be granted. "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Accordingly, when analyzing a Rule 12(b)(6) motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff, accepts all factual allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

At a minimum, the complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests, and the factual allegations must raise a right to relief above the

speculative level. *See Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602-03 (7th Cir. 2009); *Tamayo*, 526 F.3d at 1081, 1083. While a complaint need not include detailed factual allegations, a plaintiff has the obligation to provide the factual grounds supporting his entitlement to relief; and neither bare legal conclusions nor a formulaic recitation of the elements of a cause of action will suffice in meeting this obligation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("the pleading standard Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Although this does not require heightened fact pleading of specifics, it does require the complaint to contain enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp.*, 550 U.S. at 570; *Tamayo*, 526 F.3d at 1083 ("[a] plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible rather than merely speculative, that he is entitled to relief").

### III. DISCUSSION

In his complaint, Marshall's alleges multiple due process violations, violations of his rights to free speech, violation of his rights under Title IX and violation of his Fourth, Fifth, and Fourteenth Amendment rights under 42 U.S.C. §1983. The court will address each claim in turn.

A.   **Counts 1 and 3: Due Process**

Defendants contend that Marshall has not pled a viable due process claim. Although Marshall asserts a number of compelling arguments why he should have received more due process given the gravity of the charges he faced and the severity of the punishment imposed, the Court must agree with the Defendants.

To begin, Marshall argues persuasively that the same due process standards applicable to "grade school food-fights" should not also apply to disciplinary proceedings in higher education, where adult students face expulsion for allegations of sexual assault. Marshall contends that expulsion from a state university system has serious and long-term economic consequences. *See* James M. Piccozi, Note, *University Disciplinary Process: What's Fair, What's Due, and What You Don't Get*, 96 YALE L.J. 2132, 2138 (1987) ("[t]he most significant alteration of an expelled student's status, though, is his inability to re-enroll at another university. A subsequent university to which a student may apply *always* knows of the reasons for his prior dismissal. If he leaves without having earned his degree, the student must make an affirmative showing to any subsequent university to which he applies that he left the original university in good standing"); *Furey v. Temple Univ.*, 884 F. Supp. 2d 223, 247-48 (E.D. Pa. 2012) ("[e]xpulsion denies the student the benefits of education at his chosen school. Expulsion also damages the student's academic and professional reputation, even more so when the charges against him are serious enough to constitute criminal behavior. Expulsion is likely to affect the student's ability to enroll at other institutions of higher education and to pursue a career.").

In addition, Marshall asserts that, given the gravity of the charges he was facing and the severity of the penalties imposed, his attorneys should have been allowed to participate at his disciplinary hearing, rather than merely attend. *See Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir. 1993) (recognizing a limited right to counsel when the student also faces criminal charges for the same conduct); *Johnson v. Temple Univ. of Commonwealth Sys. of Higher Educ.*, No. Civ.A. 12-515, 2013 WL 5298484, at *10 (E.D. Pa. Sept. 19, 2013) (same). In this regard, Marshall notes that Columbia University recently began providing free defense counsel to students accused of sexual assault. *See Ariel Kaminer, New Factor in Campus Sexual Assault Cases: Counsel for the*

6

*Accused*, N.Y. TIMES, Nov 19, 2014, http://www.nytimes.com/2014/11/20/nyregion/new-factor-in-campus-sexual-assault-cases-counsel-for-the-accused.html

Further, Marshall argues that he was denied a "meaningful" opportunity to review the evidence against him and to defend himself. *See Gorman v. Univ. of Rhode Island*, 837 F.2d 7, 13 (1st Cir. 1988) ("[t]he hearing, to be fair in the due process sense, implies that the person adversely affected was afforded the opportunity to respond, explain, and defend"). Marshall notes that he and his attorneys were not allowed to obtain copies of the evidence against him prior to the hearing and were prohibited from interviewing witnesses while preparing his defense. Marshall asserts that the Defendants deliberately requested the presence of a uniformed police officer at the disciplinary hearing, which forced Marshall into the untenable position of having to choose between his due process rights and his Fifth Amendment right to not testify against himself.

Additionally, Marshall contends that a higher evidentiary standard should have been applied at his disciplinary hearing, instead of the minimal "preponderance of the evidence" and "some evidence" standards. Specifically, Marshall argues that a higher "substantial evidence" standard should have been required, given the quasi-criminal charges he faced. *See Sohmer v. Kinnard*, 535 F. Supp. 50, 53 (D. Md. 1982); *Bridgeforth v. Popovics*, No. 8:09-CV-0545 (GTS/RFT), 2011 WL 2133661, at *9 (N.D.N.Y. May 25, 2011).

Finally, Marshall argues that the Panel that heard his case was biased. Specifically, Marshall contends that the Panel was under pressure to aggressively prosecute campus sexual assault allegations, due to ongoing investigations against Indiana University-Bloomington for Title IX non-compliance. *See* Tyler Kingkade, *Barnard College Joins List of 94 Colleges Under Title IX Investigations*, HUFFINGTON POST, Jan. 7, 2015, www.huffingtonpost.com /2015/01/07/barnard-college-title-ixinvestigations_n_6432596.html. Further, both Ms. Hinton

7

and Mr. Tomlinson, who led the investigation into the charges against Marshall, also improperly participated in the Panel's deliberations. *See Whitford v. Boglino*, 63 F.3d 527, 534 (7th Cir. 1995) (holding that due process forbids an officer who was substantially involved in the investigation of charges against an inmate from also serving on the adjudicating committee).

In response, the Defendants note that Marshall received all the process that was due to him under the laws of Indiana and the Seventh Circuit. The Defendants note that the due process rights of students facing discipline in an educational setting are not the same as those afforded to defendants in a criminal or quasi-criminal setting. *See Linwood v. Bd. of Educ. of the City of Peoria*, 463 F.2d 763, 770 (7th Cir. 1972) (noting that "an expulsion hearing need not take the form of a judicial or quasi-judicial trial" and noting that the due process in the context of an expulsion hearing "is not to be equated . . . with that essential to a criminal trial or juvenile court delinquency proceeding"); *see also Foo vs. Indiana Univ.*, 88 F. Supp. 2d 937, 948-49 (1999).

Defendants point out that the only process that was required was "some kind of notice" and "some kind of hearing". *See Goss v. Lopez*, 419 U.S. 565, 578 (1975); *Bd. of Curators of the Univ. of Missouri v. Horowitz*, 435 U.S. 78, (1978) ("[a]ll that *Goss* required was an informal give-and-take between the student and the administrative body dismissing him that would, at least, give the student the opportunity to characterize his conduct and put it in what he deems the proper context") (internal punctuation omitted). Further, the Defendants assert that they would have been justified in providing Marshall with even less process than he received, given the allegations of on-campus, criminal activity by Marshall. *See Medlock v. Trs. of Indiana Univ.*, 738 F.3d 867, 871 (7th Cir. 2013) (upholding an expulsion without a hearing on account of alleged criminal activity by a student in a college dorm room).

Addressing Marshall's more specific due process arguments, the Defendants note correctly that the Seventh Circuit has not recognized a student's right to an attorney in educational disciplinary proceedings, particularly not in the manner advocated by Marshall. *See Osteen*, 13 F.3d at 225 ("[e]ven if a student has a constitutional right to *consult* counsel . . . , we do not think he is entitled to be represented in the sense of having a lawyer who is permitted to examine or cross-examine witnesses, to submit and object to documents, to address the tribunal, and otherwise to perform the traditional function of a trial lawyer."). In addition, the Defendants contend that some courts only allow attorneys in cases where the student also faces criminal charges for the same incident and that those courts limit the attorney's role to preventing the accused student from testifying against himself and forfeiting his Fifth Amendment rights in a criminal proceeding. *See, e.g., Gabrilowitz v. Newman*, 582 F.2d 100, 106-07 (1st Cir. 1978) (holding that a student has a right to counsel in a university disciplinary hearing, where there is a pending criminal charge for the same incident; but noting that the attorney's role at the disciplinary hearing is limited to safeguarding the student's rights at the criminal proceeding and not to affecting the outcome of the disciplinary hearing); *Gomes v. Univ. of Maine Sys.*, 365 F. Supp. 2d 6, 27-28 (D. Me 2005).

Defendants argue that they were within their rights to have an attorney represent IUPUI's case at the hearing and participate in the deliberations. *See Lamb v. Panhandle Cmty. United Sch. Dist. No. 2*, 826 F.3d 526, 529 (7th Cir. 1987). Finally, the Defendants note that, under Indiana law, they only need to meet the "some evidence" standard on appeal of an educational disciplinary decision. *See Amaya v. Brater*, 993 N.E.2d 311, 319 (Ind. Ct. App. 2013) ("[a]lthough due process requires schools and colleges to base their suspension and dismissal decisions on substantial evidence, the standard of review on appeal is whether there is some evidence to support the decision of the school or college disciplinary board.").

Although Marshall's argument that more process was potentially warranted in his case is compelling, particularly with regard to the seemingly deficient evidentiary standard applied by the Defendants at the hearing, his arguments do not find support under either Indiana or Seventh Circuit law. The Court is bound by what the law is and not by what Marshall believes the law ought to be. Notably, Marshall solely cites out-of-Circuit cases and secondary sources to support each of his arguments, none of which are binding upon this Court. Importantly, Marshall has not alleged that the Defendants based their expulsion decision on less than "some evidence", arguing instead that the standard of review should change. As the law stands in Indiana and in the Seventh Circuit, the Defendants were not required to give Marshall any more process than he received; and, therefore, dismissal of Marshall's due process claims is warranted.

Further, because Marshall has failed to identify a knowing violation of clearly established due process rights, as defined by Indiana law or the Seventh Circuit, the individual Defendants are also entitled to qualified immunity against Marshall's due process claims. *See Saucier v. Katz*, 533 U.S. 194, 236 (2001) (holding that government officials receive qualified immunity unless: their conduct violated a constitutional right, and the law to this effect was "clearly established" under then-existing law such that a reasonable official would have known that his behavior was unlawful); *but see Pearson v. Callahan*, 555 U.S. 223, 226, 238-39 (2009) (holding that the *Saucier* test is not mandatory, particularly at the pleading stage, where facts must first be developed to determine whether a constitutional right was violate). Because Marshall only alleged his due process claims against the individual Defendants, qualified immunity further justifies dismissing these claims. [1]

---

[1] Even if Marshall could proceed on his due process claims, his claim for monetary damages may not proceed for claims arising out of the Indiana Constitution. *See McIntire v. Franklin Twp. Cmty. Sch. Corp.*, 15 N.E.3d 131, 137 (Ind. Ct. App. 2014). Relief under his state claim would have been limited to declaratory or injunctive relief, which Marshall did not plead. *See Hoagland v. Franklin Twp. Cmty. Sch. Corp.*, 10 N.E.3d 1034, 1040-41 (Ind. 2014).

### B.     Counts 4 and 5:  Free Speech

Marshall also has not pled a viable free speech violation.  In this regard, Marshall alleges that the Defendants violated his free speech rights under the federal and Indiana state constitutions by not allowing him to interview other IUPUI students while preparing his defense.  However, as the Defendants point out, Marshall has failed to affirmatively demonstrate a constitutionally recognized free speech right in interviewing witnesses, particularly in an educational setting. Instead, the Defendants assert that no such right exists.  *See Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 32 F.3d 1175, 1177-78 (7th Cir. 1994) (concluding there is no first amendment right to "investigate" or to interview witnesses in private).

In his response, Marshall failed to identify even a single case to demonstrate a recognized free speech right to interview witnesses prior to an educational disciplinary hearing.  Instead, he points to cases wherein criminal defendants are afforded the rights to compel and cross-examine witnesses under the Sixth Amendment of the United States Constitution.  *See, e.g.*, *Washington v. Texas*, 388 U.S. 14, 18 (1967); *Pointer v. Texas*, 380 U.S. 400, 401, 404 (1965).  However, as already discussed, the Seventh Circuit has repeatedly held that a disciplinary hearing in an educational setting is neither a criminal or quasi-criminal hearing.  *See Linwood*, 463 F.2d at 770; *Foo*, 88 F. Supp. 2d at 948-49.  As such, the rights afforded to criminal defendants in a criminal trial do not apply.[2]  *Id*.  Instead, without authority to show that he had a free speech right to interview witnesses on his behalf prior to his disciplinary hearing, Marshall has not pled a viable free speech claim.

---

[2] Further, Marshall does not explain how a federal Sixth Amendment right would somehow translate into either a federal First Amendment free speech right or a state law free speech right.

11

In addition, as with his due process claims, because Marshall has failed to identify a clearly established free speech right to interview witnesses prior to an educational disciplinary hearing, under either Indiana or Seventh Circuit law, the individual Defendants have qualified immunity against Marshall's free speech claims as well.  *See Saucier*, 533 U.S. at 236; *Pearson*, 555 U.S. at 226, 238-39.  Because Marshall only raised his free speech claims against the individual Defendants, qualified immunity further justifies dismissing these claims.[3]

C. **Count 6:  42 U.S.C. § 1983**

Marshall has also failed to articulate a viable constitutional claim under the Fourth, Fifth, or Fourteenth Amendments, pleading no particular facts to support this claim.  *See Iqbal*, 556 U.S. at 678 ("the pleading standard Rule 8…demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and "(t)hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").  Further, as discussed, Marshall has not pled a viable due process or free speech claim.   As a result, Marshall's Section 1983 claim, which requires the showing of an underlying constitutional violation, must be dismissed as well.  *See Daniels v. Williams*, 474 U.S. 327, 330 (1986).

D. **Count 2:  Title IX Discrimination**

However, Marshall has minimally pleaded a viable Title IX gender discrimination claim. Marshall asserts his Title IX claims against all Defendants, including Indiana University and IUPUI.  Section 901(a) of Title IX states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . .

---

[3] In addition, because Marshall's state law, free speech claim improperly seeks monetary damages under the Indiana Constitution, that claim would also have to be repleaded for declaratory and injunctive relief alone.  *See McIntire*, 15 N.E.3d at 137; *Hoagland*, 10 N.E.3d at 1040-41.

." 20 U.S.C. § 1681(a). There is no dispute that Indiana University and IUPUI are subject to Title IX's prohibition on sex discrimination. Marshall contends that the Defendants expelled him from IUPUI and banned him from all Indiana University campuses for allegedly committing a sexual assault, but that the Defendants failed to even investigate a reported sexual assault committed against Marshall by a female student. (*See* [Filing No. 1-1 at 11-12](#).)

While Marshall cannot proceed on a disparate impact theory of liability under Title IX, the Defendants cannot credibly argue that the issue of intentional gender discrimination is not factually alleged by Marshall's assertion of selective, gender-based enforcement against Marshall personally. *See Ludlow v. Nw. Univ.*, No. 14 C 4614, 2015 WL 508431, at *6-7 (N.D. Ill. Feb. 5, 2015) (noting that a plaintiff must provide "some particularized allegation that would allow the Court to infer a causal connection between his treatment and gender bias"); *Doe v. Columbia Univ.*, 101 F. Supp. 3d 356, 375 (S.D.N.Y. 2015) (noting that a Title IX claim may not be established based on disparate impact and noting, instead, "to state a selective enforcement claim under Title IX, a plaintiff must allege facts sufficient to give rise to the inference that the school intentionally discriminated against the plaintiff *because of* his or her sex"); *Routh v. Univ. of Rochester*, 981 F. Supp. 2d 184, 211-12 (W.D.N.Y. 2013) (dismissing a selective enforcement claim, in part, because the male plaintiff failed to identify a similar complaint of sexual assault against a female student which was handled more favorably by the defendant university) (internal punctuation omitted).

Further, although Marshall's pleading may lack the contours of more particularized facts, the Defendants do not deny that they are in sole possession of all information relating to the allegations made by and against Marshall, notably refusing, at all times, to share such information with Marshall or his attorneys. In this regard, the Defendants cannot have it both ways, restricting access to the facts and then arguing that Marshall's pleading must be dismissed for failure to

13

identify more particularized facts. Instead, whether the facts alleged sufficiently ultimately support a claim for intentional gender discrimination under Title IX is a question for a later stage in this litigation, after fair and robust discovery by both sides.

Finally, Title IX authorizes suits against institutions and programs *only* and does not authorize suits against school officials, teachers, or other individuals. *Levin v. Madigan,* 692 F.3d 607, 614 (7th Cir. 2012). Accordingly, the claims against the individual Defendants are dismissed, however, Marshall's Title IX claim against the schools survive a motion to dismiss.

### E. Count 7: 42 U.S.C. § 1988

Because Marshall's Title IX claim remains pending, dismissal of Marshall's Section 1988 claim is not appropriate. *See* 42 U.S.C. § 1988(b) ("[i]n an action or proceeding to enforce a provision of . . . title IX of Public Law 92-318 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fees as part of the costs"). Accordingly, the Defendants' motion to dismiss Marshall's Section 1998 claim is also denied.

### IV. CONCLUSION

For the aforementioned reasons, the Court **GRANTS in part** and **DENIES in part** the Defendants' Motion to Dismiss. (Filing No. 11.) Marshall's due process claims, free speech claims, and Section 1983 claim are **DISMISSED with prejudice** and the claims against all individual Defendants are dismissed from this action. Marshall's Title IX claim and Section 1988 claim against Indiana University and IUPUI **remain pending.**

SO ORDERED.

Date: 3/15/2016

*[signature]*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Hamish S. Cohen
MATTINGLY BURKE COHEN & BIEDERMAN LLP
hamish.cohen@mbcblaw.com

Jonathan D. Mattingly
MATTINGLY BURKE COHEN & BIEDERMAN LLP
jon.mattingly@mbcblaw.com

Jeff Neuenschwander
SAEED & LITTLE LLP
jeff@sllawfirm.com


Jessica A. Wegg
SAEED & LITTLE LLP
jessica@sllawfirm.com

Jonathan Charles Little
SAEED & LITTLE, LLP
jon@sllawfirm.com